The Honorable Steve Breedlove State Representative Post Office Box 893 Greenwood, Arkansas 72936
Dear Representative Breedlove:
I am writing in response to your request for an opinion regarding the following questions:
 1. Can the AP Commission obligate tax revenues for the repayment of short term debt at a bank or to a private individual or investor/investment firm b[ey]ond the statutory authority to issue bonds?
 2. Could this debt, if allowable, be entered into without the authority of the city council?
 3. Pursuant to A.C.A. 26-75-606(c)(3), what would be the effect of not entering into such a contract?
RESPONSE
In my opinion, given the provisions of A.C.A. § 26-75-606 (Supp. 2007), the answer to your first question is "no," rendering your second and third questions moot.
Question 1: Can the AP Commission obligate tax revenues for therepayment of short term debt at a bank or to a private individual orinvestor/investment firm b[ey]ond the statutory authority to issuebonds? *Page 2 
In my opinion, the answer to this question is "no."
At issue is the permissible use of revenues realized under the Advertising and Promotion Commission Act (the "Act"), set forth in subchapter 6 of chapter 75, title 26 of the Arkansas Code (Repl. 1997 Supp. 2007). Section 26-75-602 (Supp. 2007) authorizes cities and towns by ordinance to levy a tax (colloquially known as the "hamburger tax") not to exceed 3% of the gross receipts of various business enterprises located within municipal corporate limits. Subsection 26-75-604(a) (Repl. 1997) provides that hamburger-tax proceeds will by the ordinance levying the tax be credited to an advertising and promotion ("AP") fund. Section 26-75-605 (Supp. 2007) directs any municipality imposing such a tax likewise to create by ordinance a municipal advertising and promotion ("AP") commission, which, subject to statutory restrictions, is exclusively charged with determining the disposition of revenues contained in the AP fund, A.C.A. § 26-75-606(a) (Supp. 2007).[1]
The powers and duties of an advertising and promotion ("AP") commission are purely statutory in nature and are primarily defined at A.C.A. § 606 (Supp. 2007). Specifically with respect to your question, this statute provides as follows regarding a commission's general powers and its particular role with respect to the issuance and retirement of debt: *Page 3 
 (a)(1)(A) In the manner as shall be determined by the municipal advertising and promotion commission, all funds credited to the city advertising and promotion fund pursuant to this subchapter shall be used for the:
 (i) Advertising and promoting of the city and its environs;
 (ii) Construction, reconstruction, extension, equipment, improvement, maintenance, repair, and operation of a convention center;
 (iii) Operation of tourist promotion facilities in the city or the county where the city is located if the city owns an interest in the convention center or facility, and facilities necessary for, supporting, or otherwise pertaining to, a convention center; or
 (iv) Payment of the principal of, interest on, and fees and expenses in connection with bonds as provided in this subchapter.
 (B) The commission may engage such personnel and agencies and incur such administrative costs as it deems necessary to conduct its business.
 (2)(A) The commission is the body that determines the use of the city advertising and promotion fund.
 (B) Pursuant to this section, if the commission determines that funding of the arts is necessary for or supporting of its city's advertising and promotion endeavors, it may use its funds derived from the hotel and restaurant tax.
 (3)(A) The commission may purchase, own, operate, sell, lease, contract, or otherwise deal in or dispose of real property, buildings, improvements, or facilities of any nature in accordance with this subchapter.
 (B) If the commission is dissolved, the city shall assume the authority under subdivision (a)(3)(A) of this section. *Page 4 
 (b)(1)(A) Any city of the first class that may levy and does levy a tax pursuant to this subchapter may use or pledge all or any part of the revenues derived from the tax for the purposes prescribed in this subchapter or for the operation of tourist-oriented facilities, including, but not limited to, theme parks and other family entertainment facilities or for the retirement of bonds issued for the establishment and operation of other tourist-oriented facilities, including, but not limited to, theme parks and other family entertainment facilities.
 (B) These revenues shall be used or pledged for the purposes authorized in this subsection only upon approval of the commission created pursuant to this subchapter.
 (2) Funds credited to the city advertising and promotion fund pursuant to this subchapter may be used, spent, or pledged by the commission, in addition to all other purposes prescribed in this subchapter, on and for the construction, reconstruction, repair, maintenance, improvement, equipping, and operation of public recreation facilities in the city or the county where the city is located if the city owns an interest in the center or facility, including, but not limited to, facilities constituting city parks and also for the payment of the principal of, interest on, and fees and expenses in connection with bonds as provided in this subchapter in the manner as shall be determined by the commission for the purpose of such payment.[2] *Page 5 
 (c)(1) All local taxes levied as authorized in § 26-75-602(a) shall be credited to the city advertising and promotion fund and shall be used for the purposes described in subsections (a) and (b) of this section.
 (2) The taxes shall not be used:
 (A) For general capital improvements within the city or county;
 (B) For the costs associated with the general operation of the city or county; or
 (C) For general subsidy of any civic group or the chamber of commerce.
 (3) However, the commission may contract with such groups to provide to the commission actual services that are connected with tourism events or conventions.
 (4) The authorization and limitations contained in this subsection shall be reasonably construed so as to provide funds for promoting and encouraging tourism and conventions while not allowing such special revenues to be utilized for expenditures that are normally paid from general revenues of the city.
(Emphases added.)
In my opinion, this statute clearly restricts an AP commission to financing its activities only directly through hamburger tax revenues placed in its charge or through bond revenues eventually to be repaid with hamburger tax revenues. Nothing in this statute or in the subchapter dealing with the hamburger tax suggests that an AP commission is authorized to incur short-term debt from a bank, a private individual or investor/investment firm. See Op. Att'y Gen. No. 2006-207
("[H]amburger tax revenues belong to the AP commission, not to the city, and a city may pledge such revenues only to retire bonded indebtedness . . ., and only then with the AP commission's approval."). I consequently do not believe using hamburger tax revenues for such a purpose is warranted. *Page 6 
Question 2: Could this debt, if allowable, be entered into withoutthe authority of the City Council?
In light of my response to your first question, this question is moot. I will note, however, that the city has no control over an AP commission's disposal of hamburger tax revenues, so long as the use is consistent with the authority defined in A.C.A. § 26-75-606.See Op. Att'y Gen. No. 97-259 ("[A] city's advertising and promotion commission has the ultimate authority to determine the uses of the advertising and promotion tax, without approval by the city council, provided that the chosen use of the tax is one that is authorized by the provisions of A.C.A. § 26-75-606, which set forth the permissible uses of the advertising and promotion tax.").
Question 3: Pursuant to Section 26-75-606(c)(3), what would be theeffect of not entering into such a contract?
As reflected in the statute set forth above, A.C.A. § 26-75-606(c)(3) merely authorizes an AP commission to "contract with such groups to provide to the commission actual services that are connected with tourism events or conventions." In my opinion, the reference to "such groups" in this passage is to "any civic group or the chamber of commerce" mentioned immediately before in A.C.A. § 26-75-603(c)(2)(C) — institutions that would not qualify as the lenders referenced in your request. In any event, this question is likewise moot in light of my response to your first question.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
 DUSTIN McDANIEL Attorney General
[1] In Op. Att'y Gen. No. 2006-207, my immediate predecessor pointed out the following tension in the Code regarding whether an AP commission has exclusive control over hamburger tax revenues:
 Section 26-75-607 of the Advertising and Promotion Commission Act, enacted pursuant to Acts 1969, No. 123, § 3, provides that any city of the first class, apparently with or without AP approval, may initiate a convention center project and pledge hamburger tax revenues to discharge the indebtedness. This statute is still on the books. However, this provision cannot be reconciled with A.C.A. § 26-75-606(a)(2)(A), enacted pursuant to Acts 1983, No. 821, § 1, which declares that "[t]he commission is the body that determines the use of the advertising and promotion fund," and A.C.A. § 26-75-606(b)(1)(B), enacted pursuant to Acts 1977, No. 178, § 2, which declares that hamburger tax revenues "shall be used or pledged for the purposes authorized in this subsection only upon approval of the commission created pursuant to this subchapter." In my opinion, these subsequently enacted statutes clearly control, conditioning any expenditure of hamburger tax revenues, whether directly (if authorized) or indirectly to retire bonds, upon AP commission approval.
I fully agree with my predecessor's analysis.
[2] With respect to the repayment of bonds using hamburger tax revenues, A.C.A. § 26-75-604(c) (Repl. 1997) provides:
 When the electors of any city levy a gross receipts tax as set forth in subsection (b) of this section, and when the electors of that city have pledged some or all of the proceeds thereof to the repayment of bonds as set forth in § 26-75-606(b)(1) and (2) or § 26-75-613(a)(2), the proceeds so pledged shall be deposited in the city advertising and promotion fund and distributed by the city advertising and promotion commission in accordance with the pledge and enactment of the electors. *Page 1